# EXHIBIT B:  PLAINTIFF'S COMPLAINT

STATE OF MAINE               SUPERIOR COURT
FRANKLIN, ss                CIVIL ACTION
                              DOCKET NO.: CV-19-20

MATTHEW BOYNTON,      )
                          )
    Plaintiff,              )
                          )
    v.                    )        **COMPLAINT**
                          )
SUMMIT NATURAL GAS OF MAINE, INC.  )
As a wholly owned subsidiary of SUMMIT  )
UTILITIES, INC. and SUMMIT UTILITIES,  )
INC.                          )
                          )
    Defendants.          )

FRANKLIN DC/SC/UCD
OCT 2 '19 PM 12:48

      NOW COMES Plaintiff  Matthew Boynton and hereby complains against the

defendants Summit Natural Gas of Maine, Inc., Summit Utilities, Inc., as follows:

      1.    Plaintiff, Matthew Boynton, ("Boynton") is an individual residing in

Chesterville, Franklin County, Maine.  Boynton was employed by Summit Natural Gas of

Maine, Inc. and Summit Utilities, Inc. as a Safety Inspector and Welder.

      2.    Defendant Summit Natural Gas of Maine, Inc. is a Maine Corporation

operating a gas utility company in Maine.

      3.    Defendant Summit Utilities, Inc. is a Colorado Corporation that owns natural

gas transmission companies in Arkansas, Colorado, Maine, Missouri and Oklahoma.

      4.    Throughout his employment, Boynton  had work-related and employment-

related interactions with Summit Natural Gas of Maine, Inc. and Summit Utilities, Inc.

      5.    Summit Utilities corresponded with Mr. Boynton regarding changes to

personnel policies; Summit Utilities issued the New Hire Form when Boynton was hired;

Summit Utilities provided an email address for complaints:

hrtickets@summitutilitiesinc.com to which Boynton complained relating to the matters

alleged in this Complaint.

6.    Summit Natural Gas of Maine, Inc. is a wholly owned subsidiary of Summit Utilities, Inc.

7.    Summit Utilities, Inc. and Summit Natural Gas of Maine, Inc. were both the employers of Boynton.  Defendants Summit Utilities, Inc. and Summit Natural Gas of Maine, Inc. will hereinafter jointly be referred to throughout this Complaint as "Summit".

8.    Boynton was employed at Summit from December, 2013 through April 4, 2018.

9.    In April, 2018 Boynton worked for Summit as a Welder, working on various construction projects throughout the State of Maine.  Boynton also worked as a Pipeline Safety Inspector for Summit.

10.    Boynton was knowledgeable about construction and repair of pipeline through his welding work, as well as safety standards based on his work as a Pipeline Safety Inspector.

11.    While Boynton was a Pipeline Safety Inspector he reported safety violations and OSHA issues.  Boynton's supervisors were frustrated by the number of safety issues Boynton raised.  Although Boynton never received a negative performance evaluation, Boynton was transferred to Welding in 2016.  When Boynton was transferred to the Welding position he was not provided with proper tools, did not receive a wage increase he was supposed to receive and spent over a year trying to get the promised status change processed.   Boynton used his own personal tools to perform the job for over six months.  Boynton repeatedly complained to Summit and even stated that he was concerned he was being blackballed in an email to Summit Human Resources in October, 2017.

12.    Boynton had ongoing safety concerns when he was switched to Welding.  Summit did not have proper tools to maintain the line.  Boynton complained to managers about it.  Summit frequently did not follow proper traffic safety rules when workers were

on roadways.  At one job Boynton worked soon after starting as a Welder the workers

had a near miss when a car almost crashed because there were not sufficient flaggers

on the road where Boynton and the other workers were working.  Boynton also

complained to Summit about this incident and not following safety rules.

13.    During the Fall of 2017 Boynton developed a medical problem that required

that he have ready access to clean restroom facilities. Boynton's job involved working in

the field where there were no bathrooms.  Boynton repeatedly asked Summit to provide

proper facilities for him and they did nothing.  Boynton complained in a written work log

about the problem and received a call from a corporate attorney in Colorado named

Forest.  Boynton was surprised to be hearing from a corporate attorney in Colorado for

something his supervisors or human resources in Maine could have easily dealt with.

Boynton took the call as a warning that I was making too many complaints.

14.    Boynton fully explained the medical issue in detail to the attorney but no

action was taken to address the problem.  Boynton had to take care of it myself.

15.    Summit did not take Boynton's complaints seriously and did not address his

problems with safety or his medical problems.  Boynton had to raise issues repeatedly

and nothing was done.  During a job on Trafton Road pre-work walkthrough, a plan was

agreed to about how the job would be conducted and then Boynton was told that he was

driving up costs.

16.    In March, 2018, Boynton was assigned to a job on Lyons Road.  It turns out

Summit had assigned Boynton and the others doing the work to the job without a permit.

Boynton asked about the permit and found out Summit had not obtained one.  Boynton

had to switch jobs and did not have the right equipment.

17.    On March 26, 2018 Boynton requested flaggers for a job on Trafton Road.

Boynton was told that none were available until the following Tuesday and he would

have to make due until then.  An inspector showed up to the job and said flaggers were

required.  Boynton told the inspector that his request for flaggers had been denied because of there was no contract with the flagging company.  No action was taken to remedy the safety defect.

18.     On March 29, 2018 Boynton was working along I-95 Southbound.  When Boynton got to the job, he realized that the traffic control plan was not in accordance with state and federal safety requirements.  Boynton called a supervisor, Bryan Haverman, to request the most up to date traffic control plan for the job.  Boynton asked about a lower speed limit sign.  Boynton also stated more barrels were needed to more gradually close the lane.  Boynton's requests were denied and he was told nothing else was needed. While Boynton was on the job, the Maine Department of Transportation called twice to stating that the traffic control plan was out of compliance.  Later that day there was a serious car accident when a young woman hit the barrel taper and flipped her car.

19.     At the job site immediately following the accident Boynton was questioned by Summit supervisors and investigators about the traffic control plan, even though he had complained that it was out of compliance.  Later that day Boynton was suspended even though he had done nothing wrong and he had complained about the inadequate traffic control plan.  Other employees have not been suspended just because an accident occurred at the job site.

20.     Then, on April 4, 2018 Boynton was fired because he was accused of failing to participate in Summit's investigation of the accident.  This is false.  Boynton spent over two hours on site with Summit officials answering questions and going over details.  It was clear to Boynton that Summit was trying to blame Boynton for the accident.  Boynton was concerned Summit would determine he was legally liable.

21.     Summit called Boynton in for another meeting.  Because of his fears, Boynton asked questions about the meeting, which Summit refused to answer.  Boynton

wanted more information before he would continue to meet and talk with Summit about the accident but he never refused to participate in the investigation.

22.     Boynton had no prior performance problems or discipline in the five years he worked at Summit in either position he held.

23.     The accident caused Boyton severe emotional distress.  He was very concerned about the safety of the young woman who had been in the accident.

24.     Summit's alleged reason for terminating Boynton is not true and is a pretext for getting rid of him because he complained about safety and made requests to accommodate his medical condition.

25.     Boynton has been severely harmed by Summits conduct.  He has been emotionally troubled and upset and it has caused great strain on his family.

26.     Boynton filed a timely complaint with the Maine Human Rights Commission. The Maine Human Rights Commission issued a notice of Right to Sue on June 28, 2019.

### Count I

### Violation of Maine Human Rights Act

### Whistleblower Protection

27.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1-25 of this Complaint as if fully set forth herein.

28.     Summit is an employer within the meaning of the Maine Human Rights Act.

29.     Boynton made multiple safety complaints to Summit about the conditions of jobs and safety precautions taken on the roadway.

30.     Summit's failure to follow safety standards resulted in a serious automobile accident.

31.     Summit retaliated against Boynton for his repeated safety complaints by falsely accusing him of not following safety standards, by suspending him during the

investigation, by demanding he submit to further inquisition and by terminating him when he requested information and assistance

32.    Boynton suffered an adverse job action in retaliation for complaining about Summit's failure to meet safety standards.

33.    Summit retaliated against Boynton in violation of the Whistleblower provisions of the Maine Human Rights Act.

34.    Summit willfully violated the Maine Human Rights Act by its conduct.

35.    Boynton has suffered severe emotional distress, termination resulting in lost wages and benefits, and further harm as a result of Summit's conduct.

## Count II

### Violation of Maine Human Rights Act

### Failure to Accommodate Disability and Retaliation

36.    Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1-33 of this Complaint as if fully set forth herein.

37.    Summit is an employer within the meaning of the Maine Human Rights Act.

38.    Boynton suffered from a disability requiring accommodation to his work at outdoor jobsites.

39.    Boynton repeatedly requested accommodations and the requests were ignored by Summit.

40.    Summit retaliated against Boynton for his repeated requests for accommodation by falsely accusing him of not following safety standards, by suspending him during the investigation, by demanding he submit to further inquisition and by terminating him when he requested information and assistance

41.    Boynton suffered an adverse job action in retaliation requesting accommodations.

42.   Summit retaliated against Boynton in violation of the of the Maine Human Rights Act.

43.   Summit willfully violated the Maine Human Rights Act by its conduct.

44.   Boynton has suffered severe emotional distress, termination resulting in lost wages and benefits, and further harm as a result of Summit's conduct.

## Count III

## Violation of ADA

45.   Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1-43 of this Complaint as if fully set forth herein.

46.   Summit is an employer within the meaning of the 42 U.S.C § 12101 *et seq*.

47.   Boynton suffered from a disability requiring accommodation to his work at outdoor jobsites.

48.   Boynton repeatedly requested accommodations and the requests were ignored by Summit.

49.   Summit retaliated against Boynton for his repeated requests for accommodation by falsely accusing him of not following safety standards, by suspending him during the investigation, by demanding he submit to further inquisition and by terminating him when he requested information and assistance

50.   Boynton suffered an adverse job action in retaliation requesting accommodations.

51.   Summit retaliated against Boynton in violation of the of the Americans with Disabilities Act.

52.   Summit willfully violated the Americans with Disabilities Act by its conduct.

53.    Boynton has suffered severe emotional distress, termination resulting in lost wages and benefits, and further harm as a result of Summit's conduct.

WHEREFORE, Plaintiff requests that this Court grant the following relief:

    (a)  enter judgment in his favor;

    (b)  award plaintiff damages for loss of wages;

    (c)  declare the conduct engaged in by Defendant to be in violation of Plaintiff's rights;

    (d)  award compensatory and punitive damages in an amount to be determined at trial and prejudgment interest thereon;

    (e)  award Plaintiff nominal damages;

    (f)  award Plaintiff prejudgment interest;

    (g)  award Plaintiff his full costs, including reasonable attorney's fees, expert fees and costs; and

    (h)  award such further relief as is deemed appropriate.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE

Dated this _____ day of September, 2019

Sally A. Morris, Bar No. 8479
Attorney at Law
Six City Center, Suite 300
Portland, ME 04101
(207) 558-6161, Ext 109
Attorney for Plaintiff Matthew Boynton

A True Copy
Attest: _Lauren M. Pratt_
Clerk

8